## L. E. WATERMAN CO. v. KLINE et al.

### In re KLETZLY.

**(Circuit Court of Appeals, Fourth Circuit.   July 7, 1916.)**

### No. 1423.

1. PATENTS ⬦⟶257—CONVEYANCES—LIMITATIONS—"INFRINGEMENT."

   The owner of a patent may sell or authorize others to sell the article without limitation as to price, time, or place, or he may limit his licensees, and any sale beyond the terms of the license, if limited, is an "infringement."

   [Ed. Note.—For other cases, see Patents, Dec. Dig. ⬦⟶257.

   For other definitions, see Words and Phrases, First and Second Series, Infringement.]

2. PATENTS ⬦⟶213—CONVEYANCES—RIGHTS OF ASSIGNEES.

   The assignee of a licensee to sell patented goods obtains no higher rights than the assignor had.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 315–320; Dec. Dig. ⬦⟶213.]

3. JUDGMENT ⬦⟶748—CONCLUSIVENESS—RES JUDICATA.

   Judgment in suit by the patentee for reclamation of patented articles, finding that the articles belonged to the trustee in bankruptcy of the licensed seller, when not appealed from by the patentee, is binding against it in subsequent suit to enjoin sale of the articles by the trustee.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1065, 1297–1301; Dec. Dig. ⬦⟶748.]

4. BANKRUPTCY ⬦⟶345—RIGHTS OF CREDITORS—UNSECURED CLAIMS—PAYMENT IN FULL.

   Although the patentee had an agreement, valid between him and the licensee for sale of the patented articles, to take back all unsold goods at list prices and credit the licensee's account therewith, the court could not, as a condition of his repurchasing the articles, order his unsecured claim paid in full to the exclusion of all other unsecured creditors of the bankrupt licensee.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. ⬦⟶345.]

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling; Alston G. Dayton, Judge.

Bill in equity by the L. E. Waterman Company against Edwin F. Kline, individually and as trustee in bankruptcy of Leo B. Kletzly. Decree for defendants, and complainant appeals.   Affirmed.

Walter B. Raymond, of New York City (H. E. Dunlap, of Wheeling, W. Va., and Victor C. Cormier, of New York City, on the brief), for appellant.

A. L. Sawtell, of Wheeling, W. Va., for appellees.

Before PRITCHARD and WOODS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.   On March 29, 1915, L. E. Waterman Company, appellant, filed its bill in equity in the District Court of the Northern District of West Virginia against Edwin F. Kline, individually and as trustee in bankruptcy of Leo B. Kletzly, appellee.

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appellant is a corporation engaged in manufacturing and selling Waterman's Ideal Fountain Pens, and is the owner of letters patent 625,722. The appellant, on January 25, 1908, entered into a license agreement with Leo B. Kletzly, of West Virginia, to furnish him at wholesale prices fountain pens to be sold by him only as licensed to the public at retail prices in the regular course of business and at full regular retail list price established by the company, and agreed to take back upon request any of the said fountain pens at the net prices at which the fountain pens were furnished, and to credit them on any account due and owing by the licensee to the company, or to pay for them in cash, in case there be no account. Kletzly agreed to sell at retail only, not to exchange them nor to sell or dispose of them except at the regular prices established by the company. Under this contract, which was not recorded, the L. E. Waterman Company furnished Kletzly pens from time to time in varying quantities. Kletzly was adjudicated a bankrupt October 22, 1912. On November 8, 1912, Edwin F. Kline was elected trustee of the bankrupt, entered upon his duties as trustee, and took possession of the bankrupt's property, including Waterman's Ideal Fountain Pens in the bankrupt's stock. Thereafter L. E. Waterman Company filed its petition in reclamation proceedings, and claimed title to and possession of the pens under the license contract with Kletzly. On the 26th April, 1913, the matter came on for hearing before the referee in bankruptcy, who held that the petition was not sufficient in law, and dismissed the same. From this order there was no appeal. The trustee in bankruptcy, having been adjudged to have title to the property, nevertheless made repeated efforts to have L. E. Waterman Company take the pens back at the net price at which they were furnished the bankrupt. But L. E. Waterman Company insisted on taking the pens back only on condition that they be credited on an open account owing the complainant by the bankrupt up to the amount of the said account, and after the account was extinguished to pay the balance in cash. On the 20th of October, 1914, the referee in bankruptcy ordered the trustee to sell said Waterman Ideal Fountain Pens in accordance with law and in accordance with the rights of the trustee. From this order there was no appeal. This action seeks to enjoin Kline from selling the fountain pens. The cause came on to be heard October 22, 1915. The court held that the trustee by a former decree of the court was in the lawful possession of the Waterman's Ideal Fountain Pens purchased by the bankrupt from the appellant. He held that under the terms of the license agreement, the appellant was entitled to take them back by paying therefor the net prices at which the same were furnished to the bankrupt. The court held that the appellant should share pro rata with other unsecured creditors of the bankrupt estate in the distribution of the assets of such estate as regards any indebtedness existing on the part of the bankrupt to the appellant, such indebtedness being properly proven in the bankruptcy proceeding, and in the event the appellant should fail to repurchase the pens and pay for the same in cash the net prices at which they were furnished the bankrupt, the trustee was entitled to dispose of the same by sale for the benefit of the bankrupt estate. Complainant was given 30

days in which to repurchase the pens under the license agreement. The appellant did not avail itself of the privilege extended by the District Court, but appealed to this court. There are nine specifications of error which are as follows:

"First. Because the plaintiff licensed the bankrupt personally to sell fountain pens made under the patent in suit, and the license granted is unassignable.

"Second. Because the license was granted to the bankrupt only because he possessed certain personal qualifications and a suitably located store required by the plaintiff as precedent to the granting of licenses, and the trustee defendant neither possesses the same qualifications nor the store.

"Third. Because the plaintiff licensed the bankrupt under a license agreement which is herein held to be valid and with the terms of which the bankrupt defendant cannot, as an alleged successor by operation of law, comply.

"Fourth. Because said license agreement provided that the licensee may sell the patented pens only in the regular course of business, and the unlicensed trustee defendant, being unable to sell said pens in the 'regular course of business,' violates said license agreement by selling or offering said pens for sale.

"Fifth. Because the restrictions which the plaintiff imposes respecting the manner in which sales of the patented pens shall be made, as the same is set forth in the license agreement attached to the bill of complaint, are enforceable against trustee defendant.

"Sixth. Because the trustee defendant is not entitled to dispose of said patented pens in a manner contrary to that specifically called for by said license agreement.

"Seventh. Because any sale of the patented pens at public auction or otherwise, or any threat or offer for sale, by the unlicensed trustee defendant, except a resale to the plaintiff under the specific terms of the license agreement, constitutes a violation of the rights secured to the plaintiff under the patent in suit.

"Eighth. Because the court has no authority to empower the trustee defendant to commit an act of infringement.

"Ninth. Because the pleadings and exhibits show that the permanent injunction prayed for in the bill should be granted."

[1-3] The appellant submitted an elaborate brief as to the monopoly rights of an owner of patents. We are in accord with all the authorities cited, but they are not applicable to this case. In our view this case is embraced in a very narrow compass. The owner of a patent may sell or authorize others to sell the patented article without limitation as to price, time, or place, or he may limit his licensees as to price, time, or locality. Any sale beyond the terms of the license is an infringement. The assignee of a licensee obtains no higher rights than the assignor had. We have stated in a few words every principle involved in the cases cited. They are elementary and self-evident. It has never been held, however, that the owner of an article manufactured under a patent is exempt from the laws of bailment or is not bound by a decree of a court of competent jurisdiction. In an action of reclamation by L. E. Waterman Company against the trustee, the court decided that the patented article belonged to the trustee. L. E. Waterman Company did not appeal. The decision in that case binds. The appellant cites numerous cases to the effect that the trustee succeeds to the article with precisely the same title the bankrupt had, but those cases were all decided under the Bankruptcy Act of 1898 and before the

amendment of June, 1910. The appellant by not regarding and complying with the law of bailments of West Virginia allowed its patented articles to pass absolutely without any limitation into the hands of Edwin F. Kline, as trustee.· Having allowed the articles to pass to Kline without limitation or restriction as to his rights to use or sell them, appellant cannot now evade the bailment laws of West Virginia or escape the binding force of the adverse decree of the court not appealed from. The owner of a monopoly doing business in a rented store room where the law gives the landlord a lien for rent upon failure to pay rent would not be heard to say that because he had the right to restrict the sale of his monopolistic articles, he could thereby deprive the landlord of his lien and of his right to sell the articles in satisfaction thereof. Nor can he evade the bailment laws through one of his licensees any more than he can himself. We see no reason why the owner of patented fountain pens is not bound by the law of bailments in the same manner and to the same extent as the owner of unpatented hats, shoes, or sugar. At any rate, if appellant did not think this good law, an appeal should have been taken from the decree of the court which, in effect, so held. If it were still an open question, we do not think the appellant could escape the penalty for ignoring the law of West Virginia but the matter is res judicata. The appellant cannot have an adverse decree unappealed from vacated in this way.

[4] The District Judge gave the appellant an opportunity to repurchase its pens, the license agreement being valid between Waterman & Co. and the bankrupt, but it refused so to do except upon condition that its unsecured account against the bankrupt should be paid in full. It needs no argument to show that the court could not order an unsecured creditor paid in full to the exclusion of all other unsecured creditors.

The decree below is affirmed.