**SECURITY MATERIALS CO. et al. v. MIX-
ERMOBILE CO., Inc., et al.**

Civil Action No. 4249–WM.

District Court, S. D. California,
Central Division.
June 30, 1947.

Hill, Morgan & Farrer, of Los Angeles, Cal., and Mellin & Hanscom, of San Francisco, Cal., for plaintiff Security Materials Co.

Lyon & Lyon, Reginald E. Caughey, and B. L. Hoyt, all of Los Angeles, Cal. for defendants..

MATHES, District Judge.

This action, seeking an injunction and damages for alleged patent infringement, was brought by Security Materials Company, a California corporation, against Mixermobile Company, Inc., a California corporation, Co-Operative Building Materials, Inc., a California corporation, and J. Burke Long.

The complaint alleges that Harold **A.** Wagner and Gustave H. Wagner are the owners of certain letters patent of the United States; that plaintiff Security Materials Company is exclusive licensee for the southern California territory under the letters patent; that the patent owners refused to join voluntarily and are therefore named as involuntary plaintiffs; that defendants have infringed and threaten to infringe the rights of Security Materials Company as licensee under the patents, by using and offering for use or sale in southern California certain machines covered by the patents.

Defendants assert in their answer (1) that Security Materials does not have sufficient interest in the patents to maintain this suit and (2) that in all events the patented articles in controversy are no longer subject to any territorial limitation as to either use or sale.

### The Facts.

The parties have stipulated for the purposes of this suit that only Patent No. 2,-234,210 is involved, and the action has been dismissed without prejudice as to the other patents mentioned in the complaint. It is further stipulated that Patent No. 2,234,210 was issued to Harold A. Wagner and Gustave H. Wagner on March 11, 1941, and the patentees remain owners of the patent.

The patented article is known as "Mixermobile." As the name suggests, a "Mixermobile" is a mobile mixer, designed and intended to mix cement on the spot wherever needed. Each machine bears an identifying serial number.

In 1939 a Mixermobile was first demonstrated to Security Materials by one Morris S. Matheson. Subsequently Gustave H. Wagner came to Los Angeles and entered into negotiations with Security Materials for the sale, operation and use of Mixermobiles in southern California. These negotiations culminated in an agreement dated May 18, 1940, licensing the Security Materials Company.

This license agreement names Wagner Concrete Equipment Co. as licensor and Security Materials Company, a California corporation, as licensee. It is signed on

behalf of the licensor: "Wagner Concrete Equipment Co.—by G. H. Wagner—by Harold A. Wagner."

A corporation named Wagner Concrete Equipment Co. was organized under the laws of Oregon on April 3, 1939 by G. H. Wagner, Harold A. Wagner and Eddie B. Wagner as incorporators. This corporation was dissolved on January 4, 1943.

The license agreement of May 18, 1940, recites that Wagner Concrete Equipment Co. "are [sic] *the sole and exclusive owners* [sic] of the right to manufacture * * * and to sell * * * [Mixermobiles], together with the granting of right of use or sale within certain prescribed territories within the United States * * *"; that Security Materials "is desirous of purchasing two * * * and of obtaining the *sole and exclusive right for a license* for the *sale* and/or *operation* and/or *use* of said machine, as manufactured by the said Wagner Concrete Equipment Co. in the following described territory of California: All that section of southern California lying south of the northerly boundary line of the City of Bakersfield, California; and all of the County of San Bernardino extending north of prolongations of the northerly boundary line of the City of Bakersfield." [Emphasis added.]

The agreement provides that: "As a further consideration for * * * purchasing the aforesaid Mixermobile machines * * * [Wagner Concrete Equipment Co.] does hereby grant and/or license to [Security Materials] * * * the sole and exclusive right for the sale and/or operation and/or use of said Mixermobile machine in that section of the State of California hereinabove described."

The agreement also contains a warranty that Wagner Concrete Equipment Co. has the legal right to grant Security Materials "the exclusive rights" in southern California, and authorizes Security Materials to grant sub-licenses. Security Materials agrees to "use every reasonable effort to extend the use of the machine in order to properly take care of the territory * * *."

There is no reference in the agreement to any particular patent. However, Patent No. 2,234,210 was not issued to Harold A. Wagner and Gustave H. Wagner until some ten months after the license agreement was executed. The agreement does provide, however, that Security Materials "shall have the sole and exclusive right in said territory to every improvement in, or addition to, the said invention"; and further that: "* * * [Wagner Concrete Equipment Co.] affirms that if or when patents now pending are granted, it is *their* [sic] purpose to defend any proceeding for the revocation of the said letters patent, and to prosecute any infringement of said letters patent." [Emphasis added.]

When the license agreement of May 18, 1940 was executed, defendant J. Burke Long was Secretary of the Security Materials Company. A short time later, while still employed in that capacity and with full knowledge of the license in favor of Security Materials, defendant Long went to Oregon and negotiated a license agreement with the Wagners.

This agreement, dated July 1, 1940, was made "by and between Gustave H. Wagner and Harold A. Wagner, doing business under the firm name and style of Mixermobile Manufacturers * * * and J. Burke Long and Morris S. Matheson * * *," and *granted to Long and Matheson the exclusive right to sell* Mixermobiles throughout the United States, "excluding * * * California * * *" and several other western states. It was further provided that Long and Matheson "agree not to infringe or assist others in the infringement of * * *" the patents covering Mixermobiles. [Emphasis added.]

On December 9, 1940, a supplemental agreement was executed granting Long and Matheson the exclusive right to *manufacture and sell* Mixermobiles within the territory described in their license agreement of July 1, 1940, and within certain foreign countries. The supplement provided, as did the prior agreement, that the license could not be assigned by licensees Long and Matheson, without the written consent of the licensors, except to "such corporation as may be formed by Licensees, providing such corporation is controlled at all times by Licensees."

Thereafter Long and Matheson organized defendant Mixermobile Company, Inc., a California corporation, and assigned their rights under the original and supplemental license agreements to that corporation.

Three Mixermobiles, Nos. 323, 270 and 263, give rise to the controversy in this cause. It is stipulated: (1) that Mixermobile No. 323 was manufactured in Pennsylvania for defendant Long under authority of the Long and Matheson license agreement of December 9, 1940; (2) that Mixermobile No. 270 was purchased in Oregon on May 7, 1943, by defendant Long from Mixermobile Manufacturers, a co-partnership consisting of Harold A. Wagner and Gustave H. Wagner; and (3) that Mixermobile No. 263 was likewise purchased in Oregon on February 1, 1943, by defendant Mixermobile Company, Inc., and subsequently transferred to defendant Long.

It is also stipulated that defendant Long now holds legal title to all three Mixermobiles and that prior to the commencement of this suit he brought the machines into the southern California territory covered by the Security Materials license, where he has since used them and offered them for sale.

Before bringing the Mixermobiles to California, the machines were leased for use in different sections of the United States. On June 15, 1944, defendant Long entered into an agreement with defendant Co-Operative Building Materials, Inc., for the joint use and operation by the parties of the three Mixermobiles in this district, with an option granted Co-Operative to buy the machines.

The complaint in this action was filed on February 13, 1945. On September 25, 1945, Gustave H. Wagner, signing as secretary-treasurer of Wagner Concrete Equipment Co., wrote a letter to Security Materials Company purporting to terminate the license agreement of May 18, 1940. Plaintiff replied stating that in so far as Security Materials was concerned, the contract was not terminated.

On October 6, 1945, Gustave H. Wagner, signing as a partner of Mixermobile Manufacturers, wrote to defendant Long as follows: "Confirming our telephone conversation of this date, this is your authority to sell our equipment in the southern California territory. This will be confirmed in the next few days by the Contract being drawn up by our Attorney."

### Capacity to Sue.

The parties agree that the grantee of an exclusive license within a specified territory may maintain an action for patent infringement in the name of the patent owner; and where the owner of the patent is not within the jurisdiction of the court and refuses to join as plaintiff, the licensee may name him as co-plaintiff without consent. Independent Wireless Co. v. Radio Corporation of America, 1925, 269 U.S. 459, 468, 469–474, 46 S.Ct. 166, 70 L.Ed. 357; E. W. Bliss Co. v. United States, 1919, 253 U.S. 187, 192, 40 S.Ct. 455, 64 L.Ed. 852; Wyman v. Monolith Portland Cement Co., 9 Cir., 1930, 44 F.2d 328, 329.

But defendants contend that Security Materials is not an exclusive licensee, hence may not maintain this action. This is said to be so for two reasons: first, that the agreement of May 18, 1940, does not sufficiently identify the patent; and second, that the agreement is with the Wagner Concrete Equipment Co., a corporation, which never owned the invention or patent in suit and had no right to grant the license under which Security Materials claims.

The first reason advanced is wholly without merit since the agreement in question specifically covers the invented machine, called "Mixermobile," and patents for that invention then pending. The patent in suit was pending at the time the license agreement was made, and covers the Mixermobile machine. Defendants are placed in an awkward position to assert that more is necessary, since the agreements under which they claim license do not mention the patent in suit with any greater degree of particularity.

The second reason is equally without merit. There is nothing in the agreement of May 18, 1940, to indicate that the grantor of the license was a corporation. The mere fact that at the time the agree-

ment was executed there existed a corporation, organized by the Wagners and bearing the name Wagner Concrete Equipment Co., is not sufficient to warrant a finding under the circumstances at bar that Harold A. Wagner and Gustave H. Wagner signed as officials of a corporation, rather than as individuals doing business under the name Wagner Concrete Equipment Co.

The name Wagner Concrete Equipment Co. was still being used by the Wagners almost three years after the corporation of that name was dissolved. It appears, moreover, that the corporation itself was the alter ego of Harold A. Wagner and Gustave H. Wagner.

█ I therefore find that Security Materials is an exclusive licensee under Patent No. 2,234,210 within the territory specified in the agreement; that the patent owners are not within the jurisdiction of this court, but have been requested by the licensee to join as party plaintiffs and have refused to do so. Accordingly, Security Materials, as exclusive licensee, has a right to maintain this cause, naming Harold A. Wagner and Gustave H. Wagner as party plaintiffs without their consent. Independent Wireless Co. v. Radio Corporation of America, supra, 269 U.S. 459 at 469–474, 46 S.Ct. 166, 70 L.Ed. 357; cf. Radio Corporation of America v. Emerson, 2 Cir., 1924, 296 F. 51, certiorari denied, 1924, 265 U.S. 582, 44 S.Ct. 456, 68 L.Ed. 1190; Littlefield v. Perry, 1874, 21 Wall. 205, 88 U.S. 205, 22 L.Ed. 577.

### Infringement.

Defendants contend that Mixermobiles numbered 263 and 270 were purchased from the patentees by ordinary bills of sale, free of all restrictions as to use or resale; that the sales were made in Portland, Oregon, a territory not covered by any licensing agreement; that purchase of these machines was a transaction independent of the agreements licensing Long and Matheson; that therefore any purchaser of the machines has a right to use and sell them in any territory of the United States, notwithstanding license agreements granting an exclusive right to use and sell in a particular territory.

As to Mixermobile No. 323, defendants contend this machine was likewise sold without restrictions by a licensee authorized to manufacture and sell; that therefore the purchaser has a right to use and sell the machine in any territory of the United States. This contention is predicated upon the fact that Long and Matheson assigned their rights under the license agreements to defendant Mixermobile Company, Inc., a corporation, and the latter purported to sell as licensee to defendant Long as an individual.

As stated before, the agreements between the patentees and Long and Matheson provided that the license could not be assigned without written consent of the licensors, except to a corporation formed and at all times controlled by licensees Long and Matheson. It does not appear that any written consent of the licensors was given in connection with the assignment made to defendant Mixermobile Company, Inc. Moreover it is clear from the evidence that defendant Mixermobile Company, Inc. must be considered the alter ego of defendant Long.

█ It is well and soundly established that an individual cannot escape liability for patent infringement by use of a corporate shield. Moseley v. United States Appliance Corp., 9 Cir., 1946, 155 F.2d 25, 27; General Electric Co. v. Wabash Appliance Corp., 2 Cir., 1938, 93 F.2d 671, 674; Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir., 1935, 80 F.2d 186; Hitchcock v. American Plate Glass Co., 3 Cir., 1919, 258 F. 948; Calculagraph Co. v. Wilson, C.C.Mass., 1904, 132 F. 20, 30.

█ As to defendants Long and Mixermobile Company, Inc., then, the actions of one will be considered the actions of the other; and any sale or other transfer from one to the other will be disregarded in deciding questions of infringement, since the corporation was Burke's "agent and instrument." Moseley v. United States Appliance Corp., supra, 155 F.2d at page 27.

█ With respect to the ordinary sale of a patented article by a patent owner or licensee, no restriction as to use or disposition, either in point of time or geographical-

ly, may be imposed upon the vendee, since the article "passes without the limit of the monopoly" upon consummation of the sale. Adams v. Burke, 1873, 17 Wall. 453, 84 U.S. 453, 456, 21 L.Ed. 700; Bloomer v. McQuewan, 1852, 14 How. 539, 55 U.S. 539, 549, 14 L.Ed. 532; Becton, Dickinson & Co. v. Eisele & Co., 6 Cir., 1936, 86 F.2d 267, 270, certiorari denied, 1936, 300 U.S. 667, 57 S.Ct. 509, 81 L.Ed. 874; J. F. Rowley Co. v. Rowley, 3 Cir., 1927, 18 F.2d 704; Jackson v. Vaughan, C.C.N.D.Cal., 1896, 73 F. 837, 839.

In more recent language of the Supreme Court, "The first vending of any article manufactured under a patent puts the article beyond the reach of the monopoly which that patent confers." United States v. Univis Lens Co., 1941, 316 U.S. 241, 252, 62 S.Ct. 1088, 1094, 86 L.Ed. 1408.

■ Thus neither buyer nor seller is liable for infringement when an exclusive licensee in one territory makes a bona fide sale, even with knowledge that the buyer will use the patented article in another licensee's exclusive territory; for the ordinary buyer may use or resell anywhere and at any time. Keeler v. Standard Folding Bed Co., 1894, 157 U.S. 659, 666, 15 S.Ct. 738, 39 L.Ed. 848; Hobbie v. Jennison, 1892, 149 U.S. 355, 13 S.Ct. 879, 37 L.Ed. 766; Jackson v. Vaughan, supra, 73 F. 837 at 838.

■ The patent owner may, however, grant licenses to sell or use subject to conditions and restrictions within the bounds of the patent monopoly. Mercoid Corporation v. Mid-Continental Co., 1943, 320 U.S. 661, 664, 64 S.Ct. 268, 88 L.Ed. 376; General Pictures Co. v. Western Electric Co., 1937, 304 U.S. 175, 181, 58 S.Ct. 849, 82 L.Ed. 1273; Id., 1938, 305 U.S. 124, 125, 59 S.Ct. 116, 83 L.Ed. 81, affirming, 2 Cir., 1937, 91 F.2d 922, 929; George Close Co. v. Ideal Wrapping Machine Co., 1 Cir., 1928, 29 F.2d 533, 535.

■ That is to say, the patent owner may grant licenses "upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure." United States v. General Electric Co., 1926, 272 U.S. 476, 489, 47 S.Ct. 192, 196, 71 L.Ed. 362. Accordingly, "The owner of the patent may sell or authorize others to sell the patented article without limitation * * * or he may limit his licensees as to price, time, or locality." L. E. Waterman Co. v. Kline, 4 Cir., 1916, 234 F. 891, 893. And "The statutory authority to grant the exclusive right to 'use' a patented machine * * * is precisely the same, as the authority to grant the exclusive right to 'vend,' * * *." Motion Picture Co. v. Universal Films Co., 1916, 243 U.S. 502, 516, 37 S.Ct. 416, 420, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas.1918A, 959.

■ So where the patentee grants exclusive licenses containing restrictions, any sale or use of the patented article by a licensee beyond the limitations lawfully imposed constitutes an infringement of the patent. George Close Co. v. Ideal Wrapping Machine Co., supra, 29 F.2d at 535; Schrade v. Camillus Cutler Co., D.C.N.D. N.Y., 1917, 242 F. 523; L. E. Waterman Co. v. Kline, supra, 234 F. at 893; Indiana Mfg. Co. v. Nichols & Shepard Co., C.C. E.D.Mich., 1911, 190 F. 579. Conversely, a patent owner who infringes an exclusive licensee's territory or rights is himself liable for infringement. New York Phonograph Co. v. National Phonograph Co., 2 Cir., 1906, 144 F. 404; Corbin v. E. Taussig Co., C.C.E.D.Pa., 1904, 132 F. 662.

■ By the same token a buyer who purchases with knowledge that the sale is beyond the scope of the license is liable for infringement if he uses the article in violation of any lawful restriction imposed in the license. General Pictures Co. v. Western Electric Co., supra, 304 U.S. 175 at 181–182, 58 S.Ct. 849, 82 L.Ed. 1273, 305 U.S. 124 at 126–127, 59 S.Ct. 116, 83 L.Ed 81, affirming, 2 Cir., 91 F.2d 922 at 928, 929; American Gramophone Co. v. Walcutt, C.C. N.Y., 87 F. at 556.

■ In the case at bar the license granted to Long and Matheson, and later assigned to defendant Mixermobile Company, Inc., expressly restricts the right to sell to a territory which does not include southern California. However, this license does not deal with "use" of the machines.

The right to use in the territory in which a licensee is authorized to manufacture and sell is of course implied. But the crux of the problem here is whether defendants Long and Mixermobile Company, Inc., are authorized by the Long-Matheson license to use Mixermobiles in the territory covered by the Security Materials license. "Any use beyond the valid terms of a license is, of course, an infringement of a patent." General Pictures Co. v. Western Electric Co., supra, 305 U.S. 124 at 126, 59 S.Ct. 116, 117, 83 L.Ed. 81.

■ The Long-Matheson license is subject to Security's prior license. Where two valid licenses conflict, the first must prevail. Walker, Patents (Deller's Edition, 1937) Vol. II, § 381, p. 1491. This results from applying here the age-old maxim of "First in time, superior in right."

■ Concededly, if defendants Long or Mixermobile Company, Inc., should sell a Mixermobile free of restrictions to an ordinary purchaser in the territory covered by the Long-Matheson license, the machine would pass as stated before "without the limit of the monopoly." But that is not the type of sale involved at bar. Both defendants Mixermobile Company, Inc. and Long procured the machines in question as licensees under the Long-Matheson license. In their hands then, the machines remain subject to the patent monopoly, hence to the licensing agreements thereunder.

That part of the patent monoply consisting of the right to sell and use in the southern California territory belongs exclusively to Security Materials. So any sale or use in this territory by another licensee, or even by the patentees themselves, constitutes an infringement of that portion of the patent monopoly which the patent owners transferred to Security Materials by the license agreement of May 18, 1940.

The Long-Matheson license, moreover, contains a covenant by the licensees not to infringe the patents covering Mixermobiles. And defendants Long and Mixermobile Company, Inc. procured the machines with full knowledge of the exclusive license granted Security Materials "for the sale and * * * operation and * * * use of said Mixermobile machine in that section of the state of California hereinabove described." Their violation of the exclusive territory of another licensee thus appears to be without justification in law or equity.

Therefore plaintiff Security Materials Company is entitled, upon the evidence adduced, to an injunction restraining defendants from selling or using in any way or manner, directly or indirectly, Mixermobile machines numbered 263, 270 or 323 in the southern California territory covered by the Security Materials license.

■ Although defendant Co-Operative Building Materials, Inc., is not subject to the license agreements, Security Materials is entitled upon the evidence adduced to have this defendant restrained from acting in conjunction with the other defendants to enable them to do indirectly, through Co-Operative Building Materials, what they are forbidden to do directly.

All parties have reserved the right to adduce further evidence upon the other issues raised by the pleadings, if so advised following this decision.

Any party desiring to offer additional evidence may move within twenty days to set a date for further trial. If no such motion be filed within the time fixed, the right thus reserved will be deemed waived and counsel for plaintiff Security Materials Company will prepare findings of fact, conclusions of law and judgment pursuant to local rule 7 within ten days thereafter.